UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOANN DOHRMANN-GALLIK,

                              Plaintiff,

        -against-

LAKELAND CENTRAL SCHOOL DISTRICT and
LAKELAND FEDERATION OF TEACHERS,

                              Defendants.

No. 14-cv-4397 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

 Plaintiff brings this action against the Lakeland Central School District (the "District")

and the Lakeland Federation of Teachers (the "Union") asserting claims under 42 U.S.C. § 1983

for deprivation of her property without due process of law, for violation of the Rehabilitation Act

of 1974 (the "Rehabilitation Act"), and under various state law doctrines.  Defendants move to

dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the

following reasons, Defendants' motions are GRANTED.

## BACKGROUND

 Plaintiff was a third-grade teacher employed by the defendant District.  The instant

dispute concerns the denial of her application for a "Sick Leave Bank" benefit established by the

collective bargaining agreement (the "CBA") between the District and her Union.  In addition to

traditional sick leave, the CBA establishes a supplemental Sick Leave Bank program.  (Compl.

¶ 10, ECF No. 1.)  Participation in this program is voluntary.  (*Id.*)  Participants must contribute

at least two unused sick days to the bank, and thereby gain the right under the CBA to apply for

Sick Leave Bank days after exhausting their traditional sick leave.  (*Id.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/27/15

Participants may apply for Sick Leave Bank by submitting a form to the Sick Leave Bank Committee (the "Committee"), which makes all eligibility determinations.  (*Id.* ¶ 11.)  The Committee is comprised of five members—two appointed by the Union, two appointed by the District, and one independent physician selected by the four other members.  (Compl. Ex. A, at 31, ECF No. 1.)  Under the heading "Application for Benefits," the CBA provides:

> 1. Teachers who have exhausted their sick leave days and have a serious personal illness or disability requiring long periods of medical care, and are unable to return to work on a full-time basis, as determined by both the teacher's physician and the Sick Leave Bank Committee physician, may apply to the Sick Leave Bank Committee for utilization of Sick Leave Bank days . . . .

> 2. Such application shall be in writing, submitted on forms . . . supplied by the Committee with all the information called for properly filled in and shall be accompanied by the applicant's physician's report and prognosis.  The Committee shall have the right to require the applicant to be examined by the School District's Chief Physical Medical Officer who shall have the right to receive and review any medical certificates and reports relating to the applicant.  In addition, the Sick Leave Bank Committee Physician shall have the right to receive and review all medical reports and records of an applicant for Sick Leave Bank benefits which in his judgment pertain to the condition for which the application is made.

> 3. After evaluating all pertinent evidence, the Sick Leave Bank Committee shall decide on the eligibility of the teacher to receive Sick Leave Bank days, in connection with the particular illness or disability.

> . . . .

> 6. Application of the Sick Leave Bank plan in recurring or related illnesses shall be determined by the Committee.  However, it is the intention of the Sick Leave Bank not to cover recurring illnesses such as asthma, allergies, rheumatism, etc.

(*Id.* at 31-32.)  Furthermore, "the maximum, lifetime Sick Leave Bank benefits for any one illness or injury, shall be limited to utilization of 374 Sick Leave Bank days (salary for two school years)."  (*Id.* at 30.)  The parties vigorously dispute the scope of the language limiting eligibility and the degree of discretion that the CBA confers to the Committee in determining eligibility.

Plaintiff suffers from illnesses including fibromyalgia, thyroid disease, hypertension, diabetes, rheumatoid arthritis, and severe osteoarthritis of her left knee and wrist.  (Compl. ¶ 8.)

Plaintiff began the 2012–2013 school year as a third-grade teacher.  (*Id.* ¶ 9.)  She shortly became too ill to work and went out on traditional sick leave beginning September 19, 2012.  (*Id.* ¶¶ 9, 14.)  She exhausted her traditional sick leave and applied for Sick Leave Bank.  (*Id.* ¶ 14.)  The Sick Leave Bank Committee approved her application and she was granted Sick Leave Bank for January 18, 2013 through June 21, 2013, the last day of the 2012–2013 school year.  (*Id.*)

In June 2013, Plaintiff advised the District that she would be unable to return to work for the following term in September 2013.  (*Id.* ¶ 15.)  The District forwarded her an application for Sick Leave Bank and she applied to continue using Sick Leave Bank beginning September 2013, but did not list an anticipated end date for her absence.  (*Id.*)  On September 16, 2013, Plaintiff learned that her application was denied, and when she asked for a reason for the denial she received a letter stating, "Committee members have the right to make a recommendation that they see fit (approval or denial) on a case by case basis."  (*Id.* ¶ 17; Compl. Ex. G, at 3.)  Plaintiff grieved the denial, and was told by letter dated October 18, 2013 that her application was denied because it failed to list an end date for her absence.  (Compl. ¶¶ 18-19.)  Plaintiff reapplied on October 24, 2013, this time listing an end date.  (*Id.* ¶ 20.)  Her application was again denied, and on January 6, 2014, the District's Superintendent wrote to Plaintiff noting that the "illness or disability presented . . . are not of the nature that allows Committee members to act favorably upon the application," citing to the "recurring or related illnesses" exclusion.  (*Id.* ¶¶ 21, 24.)

In April 2014, Plaintiff submitted a notice of intent to return to the District.  (*Id.* ¶ 29.)  The District advised her that she had lost the right to return to her third-grade classroom because she had been on unpaid leave for a year, and offered her Remedial Math or Sixth Grade Humanities.  (*Id.* ¶¶ 29-30.)  Plaintiff claims that these assignments are too stressful because she

has no experience teaching either subject and she requires assignment to second or third grade as an accommodation.  (*Id.* ¶ 30.)

## STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In applying this standard, a court should accept as true all well-pleaded factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Id.*

## DISCUSSION

Plaintiff asserts claims under 42 U.S.C. § 1983 against both defendants and under the Rehabilitation Act against the District alone.  Plaintiff also asserts claims under various state-law doctrines against both the District and the Union.

## I.      42 U.S.C. § 1983 Claim

Plaintiff's § 1983 claim must be dismissed.  "To state a § 1983 claim, a plaintiff must allege (1) 'that the defendants have deprived him [or her] of a right secured by "the Constitution and laws" of the United States' and (2) 'that the defendants acted under "color of state law" in infringing his [or her] constitutionally protected right.'"  *Gonzalez-Blanco v. Police Dep't of Greenburgh*, No. 13-CV-8708 NSR, 2015 WL 3490738, at *2 (S.D.N.Y. June 1, 2015) (quoting *Stevens v. Dutchess County, N.Y.*, 445 F. Supp. 89, 91 (S.D.N.Y. 1977)).  Plaintiff asserts that (1)

she was deprived of a property interest without due process of law in violation of the Due Process Clause of the Fourteenth Amendment and (2) that the actions of the Sick Leave Bank Committee are "fairly attributable" to the District, satisfying the "under color of state law" element.  Defendants dispute both elements.

Courts engage in a two-step analysis when resolving procedural due process claims. "The threshold issue is whether [Plaintiff] assert[s] a property interest protected by the Constitution."  *Danese v. Knox*, 827 F. Supp. 185, 190 (S.D.N.Y. 1993).  "If a protected interest is identified, the second step is to determine whether the defendants deprived [Plaintiff] of that interest without due process."  *Id.*

Plaintiff argues she has a protected property interest in the Sick Leave Bank benefit.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  "[C]ourts have uniformly held that a collective bargaining agreement can be the source of a property right entitled to due process protection."  *Danese*, 827 F. Supp. at 190.  But "not every contractual benefit rises to the level of a constitutionally protected property interest."  *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991).  "'It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a [state actor] into a federal claim.'"  *Id.* (quoting *San Bernardino Physicians' Servs. Med. Grp. v. County of San Bernardino*, 825 F.2d 1404, 1408 (9th Cir. 1987)); *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 31 (2d Cir. 1994) ("[W]here a breach of contract does not give rise to a deprivation of a protectible property interest, plaintiff's exclusive remedy 'lies in state court for breach of contract.'").  Synthesizing numerous cases, the Western District of New York has observed that

5

when federal courts find that a CBA or other nonstatutory source has created a protectable

property interest, "typically it is because the CBA, or the employer's explicitly stated policies,

virtually guaranteed that the employee would enjoy some particular, significant benefit, or that

the employee would not be disciplined without cause." *MacFall v. City of Rochester*, 746 F.

Supp. 2d 474, 483 (W.D.N.Y. 2010), *aff'd*, 495 F. App'x 158 (2d Cir. 2012). Generally, the

types of contractual benefits that are protected by the Due Process Clause are those bearing a

quality or character of "extreme dependence," as in the case of welfare benefits, or

"permanence," as in the case of loss of public employment. *S&D Maint. Co. v. Goldin*, 844 F.2d

962, 966 (2d Cir. 1988); *see also Danese*, 827 F. Supp. at 191-92.

No court in this circuit has yet decided whether a sick leave bank benefit such as this

carries due process protection, but the Second Circuit has addressed other employment benefits.

*Basciano v. Herkimer* is one of the few cases in which the Second Circuit has found a protected

property interest in an employment benefit. *See* 605 F.2d 605, 609 (2d Cir. 1978). In that case, a

laborer employed by the city applied for accident disability retirement after suffering an injury

on the job. *Id.* at 606. His application was denied. *Id.* at 606-07. The Second Circuit concluded

that the mandatory language of New York City Administrative Code, which required that the

City grant accident disability retirement benefits to those who meet certain criteria, created a

property interest protected by the Due Process Clause. *Id.* at 609.

The Second Circuit distinguished *Basciano* in *Costello v. Town of Fairfield*, 811 F.2d

782, 783 (2d Cir. 1987). In *Costello*, the plaintiffs' collective bargaining agreement provided for

a salary increase of 4.5% at year-end. *Id.* The plaintiffs, however, retired before the increase

went into effect, and demanded that the town apply the 4.5% increase to their retirement pay at

year-end. *Id.* When the town refused, the plaintiffs filed a § 1983 claim. *Id.* At summary

judgment, the district court dismissed the claim and the Second Circuit affirmed, reasoning that the contractual increase in retirement pay was not a protected property interest. *Id.* at 784. The Second Circuit explained that *Basciano* was not controlling because it involved the denial of all disability retirement benefits, as opposed to merely an increase in benefits. *Id.* The Court further explained that the § 1983 claim was really a contract claim in disguise because the court would have had to interpret the CBA's terms to resolve whether the claimed increase was due in order to decide whether there was an "entitlement" to the increase. *Id.*

The Second Circuit in *Martz* further clarified the distinction between ordinary public contract rights and protected property interests. *See* 22 F.3d at 31. In *Martz*, the plaintiff was an attorney under contract to provide legal services to the defendant village. *Id.* at 27-28. The village voted not to pay her for services she had rendered, and the plaintiff sued under § 1983. *Id.* at 28-29. The district court dismissed the claims on summary judgment, and the Second Circuit affirmed finding that there was no protected property interest. *Id.* at 31. The Second Circuit explained that no state statute or regulation provided the plaintiff with a "legitimate claim of entitlement to the benefits of her contract with the Village," and distinguished those cases in which the court had found that a state law specifically recognized an entitlement to the claimed benefit. *Id.* at 30. Instead, the plaintiff's claim was more appropriately treated as an ordinary contract claim. *Id.* at 31.

District court case law provides further guideposts. The most closely analogous case from this district is *Danese*. *See* 827 F. Supp. at 192. The lead plaintiff in *Danese* was a former police officer who went out on sick leave after suffering an injury on the job, utilizing "line-of-duty sick leave" provided pursuant to a collective bargaining agreement. *Id.* at 188. Two months after her injury, although her own physician opined that she should remain on leave,

her employer's physicians cleared her for light duty and her employer refused to extend her line-of-duty sick leave. *Id.* When she did not return to work, she was charged with insubordination for being absent without leave and faced termination. *Id.* The Court found that there was no protected property interest in continued line-of-duty sick leave for three reasons. *Id.* at 193. First, the benefit was purely contractual—no constitutional, statutory, or regulatory provision recognized the plaintiff's entitlement to line-of-duty sick leave. *Id.* at 192-93; *cf. Sanchez v. City of Hartford*, 10 F. Supp. 2d 162, 167 (D. Conn. 1998) ("Here, [the plaintiff's] claim is more than a simple breach of contract claim. It is based on specific statutory and regulatory provisions which, he maintains, gave him an entitlement to early withdrawal of his deferred compensation funds."). Second, the deprivation of line-of-duty sick leave did not have a quality of "extreme dependence" or "permanence" because it was capped at two years and conditioned on the existence of a medical disability sustained in the line of duty. *Danese*, 827 F. Supp. at 193. The Court rejected the plaintiff's counterargument that the denial of sick leave resulted in her discipline, termination, and loss of livelihood; the Court explained that the proximate cause of these outcomes was, instead, her decision not to return to work. *Id.* at 193 & n.3. Third and finally, the Court explained that the denial of an extension of line-of-duty sick leave is different from denial of the entire benefit. *Id.* at 193 (citing *Costello*, 811 F.2d 782); *cf. Basciano*, 605 F.2d at 609 (finding that denial of the entire basic retirement benefit was a deprivation subject to Due Process protection); *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332 (E.D.N.Y. 2009) (finding that the refusal to pay an employee any disability retirement benefits was a deprivation of a protected property interest where the plaintiff's entitlement to the benefit was unquestionable under the terms of the applicable CBA, the employer had, in fact, determined that the plaintiff met the criteria to receive the benefit, and New York statutes

8

acknowledged the plaintiff's entitlement to the benefit).  For these reasons, the Court found that

there was no protected property interest.

At least one district court outside of this circuit has declined to extend constitutional

protection to a "sick leave bank" program analogous to the program at issue here.  *See Miller v.*

*Portland Pub. Sch. Dist. No. 1*, No. CV04-1421-HU, 2005 WL 3508000, at *1 (D. Or. Dec. 22,

2005).  Other out-of-district courts have likewise declined to extend constitutional protection to

sick leave and comparable contractual benefits.  *See, e.g.*, *Skowronek v. Borough of Avonmore*,

No. CIV. A. 07-689, 2007 WL 2597930, at *3 (W.D. Pa. Sept. 5, 2007) ("Employment benefits,

such as sick leave, are not property interests protected by the due process safeguards of the

Fourteenth Amendment."); *Piekutowski v. Twp. of Plains*, No. 05-2078, 2006 WL 3254536, at

*3-5 (M.D. Pa. Nov. 9, 2006) (finding that payment for accumulated contractual sick leave was

not protected where the contract was not terminable only for cause and there was no allegation

that the denial threatened the plaintiff's "day-to-day survival"); *Huffman v. Town of La Plata*,

No. CIV.A. DKC 2004-2833, 2005 WL 1038854, at *7 (D. Md. May 4, 2005) (finding that

health care benefits were not protected where there was no expectation that the agreement to

provide benefits would continue in perpetuity); *Bell v. Westmoreland Cent. Sch. Dist.*, No. 87-

CV-1592, 1991 WL 33161, at *4 (N.D.N.Y. Mar. 11, 1991) (finding that the district's continued

payment of health insurance premiums was not a protected property interest where the sole

source of entitlement to the payments was a personal contract between the plaintiff (a school

superintendent) and the district).

Applying the principles set forth above, Plaintiff's claimed entitlement to continued Sick

Leave Bank benefits is not a property interest protected by the Due Process Clause.  First, the

source of the claimed benefit is purely contractual—Plaintiff has not cited any state

constitutional, statutory, or regulatory provision to support her claimed entitlement.  Second, Sick Leave Bank does not have a character or quality of "extreme dependence" or "permanence."  Sick Leave Bank is capped at a lifetime maximum of two years for any illness or injury—coincidentally, the same length of time as the cap on line-of-duty sick leave in *Danese*. Sick Leave Bank is but a supplement to traditional sick leave and, moreover, participation in the program is entirely voluntary.  Furthermore, the CBA here imposes several conditions on eligibility, as in *Danese*.  Only illnesses or disabilities that are "serious," and require "long periods of medical care" rendering the teacher "unable to return to work on a full-time basis" qualify.  Illnesses that are "recurring or related" generally do not qualify, though it appears that the Committee may still grant Sick Leave Bank for such illnesses in its discretion.  Plaintiff strenuously asserts that the denial resulted in her being without any income for a year and losing her preferred classroom.  But as in *Danese*, the proximate cause of these outcomes was not the denial itself but Plaintiff's decision not to return to work despite the denial.  Third, as in *Danese* and *Costello*, Plaintiff's claim concerns only the District's refusal to *extend* Plaintiff's Sick Leave Bank benefits to cover the 2013–2014 school term.  Plaintiff had already received Sick Leave Bank days for the latter half of the previous school year, from January 18, 2013 through June 21, 2013.  Finally, it cannot be said that Plaintiff had a "legitimate claim of entitlement" to the benefit when the CBA appears to confer an uncertain degree of discretion to the Committee. The only language that obviously constrains the Committee's discretion is that the Committee "shall decide on the eligibility of the teacher to receive Sick Leave Bank days" only "[a]fter evaluating all pertinent evidence."  Plaintiff argues that the only "definition" of "eligibility" is that a teacher must have "exhausted their sick leave days[,] . . . have a serious personal illness or disability requiring long periods of medical care[,] . . . and [be] unable to return to work on a

full-time basis." (Compl. ¶ 12 (quoting Compl. Ex. A, at 31).) But that provision goes on to state that such teachers "may *apply*," not that the Committee must grant Sick Leave Bank days to teachers who meet those criteria. (Compl. Ex. A, at 31.) Perhaps Plaintiff's interpretation was the intent of the drafters, but resolving this dispute calls for a contract interpretation analysis. Another hotly disputed issue here is whether Plaintiff's chronic conditions fall within the exclusion for "recurring or related illnesses," in which case the CBA would appear to grant the Committee unfettered discretion. This is yet another question that will turn on contract interpretation principles, evidence of intent, and medical judgements. Because the CBA language leaves some room for discretion, Plaintiff cannot plausibly make a "legitimate claim of entitlement" to Sick Leave Bank days.

The only case that Plaintiff cites, *Basciano*, is inapposite for several reasons. First, the source of the claimed entitlement here is entirely contractual. In *Basciano*, the source of the claimed benefit was the New York City Administrative Code, not a collective bargaining agreement as Plaintiff appears to believe.[1] Second, the plaintiff in *Basciano* was deprived of the entire disability benefit, not an extension of supplemental sick leave. *Costello* saw this distinction as dispositive. Third, the language creating the entitlement in *Basciano* was clear and mandatory, *see Basciano*, 605 F.2d at 611 n.3 ("If such medical examination and investigation shows that any member, by whom or with respect to whom an application is filed under this

---

[1] Counsel for Plaintiff is either citing the wrong case or has spectacularly misread *Basciano*. Plaintiff claims that Judge "Grafeo's" "concurrent" opinion in *Basciano* sheds light on the issue of how courts should treat benefits conferred by a collective bargaining agreement. (Pl.'s Opp. at 13, ECF No. 23.) Contrary to Plaintiff's representations, *Basciano* had nothing to do with a collective bargaining agreement. Furthermore, *Basciano* was a unanimous panel; the court's opinion was not accompanied by any "concurrent" opinions, let alone one by a Judge "Grafeo," which is not the name of any current or former Second Circuit judge. Perhaps Plaintiff meant to invoke Judge Van Graafeiland's concurrence in *Costello*, 811 F.2d at 785, in which he opined that a scheduled increase in retirement pay supposedly secured by a collective bargaining agreement was entitled to Due Process protection (but ultimately concluded that the plaintiffs had received all the process that was due). But the Court's majority opinion rejected that theory, holding that the agreed increase was not a protected property interest and that the plaintiffs in *Costello* were trying to, quite literally, make a federal case out of an ordinary contract dispute. *Id.* at 784. Careless legal briefing wastes judicial resources, damages counsel's credibility, and elevates the risk of erroneous decisionmaking and uncertainty in the law.

section, is physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an accidental injury received in such city-service while a member, and that such disability was not the result of wilful [*sic*] negligence on the part of such member and that such member should be retired, *the medical board shall so certify to the board . . . and such board shall retire such member for accident disability forthwith.*" (emphasis added) (quoting N.Y.C. Admin. Code ch. 3 § B3-40.0 (1976))), whereas the language here may leave room for more discretion, depending on the outcome of a contract interpretation analysis.  Ultimately, "it is the interpretation of a contract term that is at issue here and [Plaintiff has] pursued this contract dispute in the district court under the guise of a due process violation."  *Costello*, 811 F.2d at 784.  "A contract dispute, however, does not give rise to a cause of action under section 1983."  *Id.*

Because Plaintiff has failed to identify a protected property interest, the Court need not proceed to the second step of the analysis to determine whether Plaintiff received the process that was due.  The Court also need not address whether the Sick Leave Bank Committee's actions are "fairly attributable" to the District for purposes of the "under color of law" element.  Plaintiff's § 1983 claim is dismissed.  Plaintiff offers nothing to suggest that this claim will survive if Plaintiff is given an opportunity to replead; accordingly, the Court denies Plaintiff's request for leave to replead the § 1983 claim.

## II.    Rehabilitation Act Claim

Plaintiff's Rehabilitation Act claim fails right out of the gate.  Plaintiff has not adequately pleaded the threshold element of any Rehabilitation Act claim:  that she is a "qualified individual with a disability."  To be a qualified individual with a disability, the pleadings must show that Plaintiff suffers from a "physical or mental impairment" that "substantially limits" a "major life activity."  *Hedges v. Town of Madison*, 456 F. App'x 22, 24 (2d Cir. 2012) (summary opinion).

Plaintiff pleads no facts to establish that her impairment "substantially limits" a "major life activity."  Her bare allegation that she "suffered from numerous illnesses, including fibromyalgia, thyroid disease, hypertension, diabetes, rheumatoid arthritis, and severe osteoarthritis of her left knee and wrist," is insufficient.  It leaves the Court to speculate as to whether these conditions "substantially limit" any activities, what those activities may be, and whether any of those activities are "major life activities."  Courts have declined to infer that a plaintiff is a qualified individual with a disability where, as here, the complaint merely alleges a laundry list of the plaintiff's conditions.  *See, e.g.*, *id.*  Plaintiff's allegation that she was "too ill to return to work" in September 2013 is likewise insufficient because an absence from work due to a temporary condition—even if lengthy—is not, on its own, a substantial limitation of a major life activity.  *See, e.g.*, *Jackson v. Nor Loch Manor HCF*, 134 F. App'x 477, 478 (2d Cir. 2005) (finding that a surgical procedure requiring a temporary absence from work was not substantially limiting); *DeAngelo v. Yellowbook Inc.*, No. 3:12-CV-520, 2015 WL 1915641, at *6 (D. Conn. Apr. 27, 2015) ("[A] disability under the ADA does not include temporary medical conditions, even if those conditions require extended leaves of absence from work because such conditions are not substantially limiting.").  Plaintiff's further allegation that she is "disabled" or has a "disability," (Compl. ¶¶ 1, 30, 51), is insufficient because "legal conclusions couched as factual allegations" are insufficient to survive a motion to dismiss.  *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).  To the extent that Plaintiff asserts additional facts in her opposition papers in an attempt to resuscitate this claim, a "party is not entitled to amend a complaint through statements made in opposition papers."  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

Because leave to replead should be "freely given," Plaintiff is granted leave to replead this claim. Fed. R. Civ. P. 15(a)(2).  Although the Court has dismissed this claim on the disability element, Plaintiff would be wise to supplement the complaint with respect to her theory of discrimination, as well, if she chooses to replead this claim.  (*See* District's Mem. Law, ECF No. 21.)

## III.   State Law Claims

Because all claims over which the Court has original jurisdiction are dismissed and this case is still in its initial stages, the Court declines to exercise supplemental jurisdiction over the state law claims asserted against the District and the Union. *See* 28 U.S.C. § 1367(c)(3). Accordingly, those claims are dismissed without prejudice to refiling in state court.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.  Plaintiff shall have until 21 days from the date of this Order to amend the Complaint as to the Rehabilitation Act claim.  If Plaintiff elects to file an amended complaint, Defendants shall have until 30 days from the date of Plaintiff's filing to move or file responsive pleadings.  If Plaintiff elects does not file an amended complaint by the aforementioned date, the Court shall, upon notice by either party or *sua sponte*, issue an order closing the case.  For now, however, the Court respectfully directs the Clerk to terminate the motions at ECF Nos. 19 and 24.

Dated:   July 27, 2015                                          SO ORDERED:
         White Plains, New York

                                          _____
                                          NELSON S. ROMÁN
                                          United States District Judge

14